**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| CAROL RADICH, | : | |
| | : | |
| Plaintiff, | : | Civil Action 06-CV-13251 (GAY) |
| | : | |
| vs. | : | |
| | : | **DEFENDANT'S STATEMENT** |
| NEWBURGH ENLARGED CITY SCHOOL | : | **UNDER LOCAL RULE 56.1** |
| DISTRICT, | : | **FOR SUMMARY JUDGMENT** |
| | : | |
| Defendant. | : | |

Defendant NEWBURGH ENLARGED CITY SCHOOL DISTRICT (hereinafter "District"), by its attorneys, Shaw, Perelson, May & Lambert, LLP, in support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure submits the following statement under Local Rule 56.1.

1.      The Complaint in this action was filed on November 17, 2006. *Complaint at Exhibit A to Affirmation of Mark C. Rushfield, Esq.*

2.      The plaintiff was first employed by the District as a substitute teacher's aide in November of 1996 and was hired by the District as a permanent teacher's aide in 1999. *Plaintiff Deposition Transcript at pages 7-8.*

3.      The plaintiff became a teaching assistant in 2003. *Plaintiff Deposition Transcript at page 9.*

4.      When the plaintiff became a teaching assistant in 2003, she became a building delegate for her labor union, the Newburgh Teachers Association ("NTA") and retained that NTA position until a date in 2006 when she was transferred to another school building. *Plaintiff Deposition Transcript at pages 13-14 and 158.*

5.  The collective bargaining agreement between the NTA and the District covering the teaching assistants bargaining unit was entered into on December 28, 2004 and was effective from  December 28, 2004 through June 30, 2006. *Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶ 4 and Collective Bargaining Agreement at Exhibit A thereto.*

6.  Under the teaching assistants collective bargaining agreement, at Article X, paragraphs A (1) and B, the plaintiff's work day could not exceed 7 hours and 15 minutes, including a one-half hour lunch and she was entitled to receive two 15 minute breaks each day. *Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶ 5 and Collective Bargaining Agreement at Exhibit A thereto.*

7.  Article XXI ("Teaching Assistant and Association Rights."), paragraph G of the teaching assistants collective bargaining agreement provides as follows:

>  1.  All material in the personnel folder, excepting letters of recommendation, which will be removed in the presence of the teaching assistant, shall be open to the scrutiny of the teaching assistant.
>
> 2. The teaching assistant shall have the privilege and right to submit a written reply to any material in his/her personal folder. His/her answer shall be reviewed by the Superintendent, then attached to the appropriate material and placed in the folder.  In the event that the teaching assistant questions the factual accuracy of any material in the folder, the teaching assistant may submit proof supporting his or her position.  The material will not be placed in the file if it is proven to be factually inaccurate.

*Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶ 6  and Collective Bargaining Agreement at Exhibit A thereto.*

8.  Neither Article XXI ("Teaching Assistant and Association Rights."), paragraph G

of the teaching assistants collective bargaining agreement, nor any other provision of the collective bargaining agreement grants a teaching assistant the right to review materials that are not placed in his/her personnel folder. *Deposition Transcript of testimony of NTA President Philip Cordella at pages 33-37 and 143-144; Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶ 7 and Collective Bargaining Agreement at Exhibit A thereto.*

9.     For purposes of unemployment insurance benefits under New York Labor Law § 590 (10), the District provides teachers and other ten-month employees with a form letter which gives the recipient a reasonable assurance that he or she will provide services for the succeeding academic term (i.e., the succeeding school year). Such a form letter was provided to the plaintiff on or before June 1, 2006 for the 2006-2007 school year. *Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶ 8 and Exhibit B thereto.*

10.    Though the form letter provided to the plaintiff on or before June 1, 2006 for the 2006-2007 school year states that it is issued in accordance not only with New York Labor Law § 590 (10), but also with the recipient's collective bargaining agreement, no provision of the teaching assistants collective bargaining agreement provides that a notice to a probationary teaching assistant of her return for the coming school year constitutes an irrevocable offer of employment or a contract of employment for that coming school and the District never issued any notice to the plaintiff constituting an irrevocable offer of employment or a contract of employment for the 2006-2007 school year. *Affidavit of Assistant Superintendent of Human Resources Mary Ellen*

*Leimer at ¶ 9 and Collective Bargaining Agreement at Exhibit A thereto.*

11.    Article III ("Grievance Procedure") of the teaching assistants collective bargaining

agreement provides for a grievance procedure, which, at Section 2 thereof,  defines

a grievance as "a complaint by an employee in the bargaining unit (1) that there has

been as to him/her a violation, misinterpretation or inequitable application of any

of the provisions of this agreement or (2) that he/she has been treated unfairly or

and equitably by reason of any act or condition which is contrary to establish policy

or practice governing or affecting employees." *Affidavit of Assistant Superintendent*

*of Human Resources Mary Ellen Leimer at ¶ 10  and Collective Bargaining*

*Agreement at Exhibit A thereto.*

12.    Article III ("Grievance Procedure") of the teaching assistants collective bargaining

agreement provides, at Section 4, paragraph B thereof that any "grievance will be

deemed waived unless written grievance is forwarded at the first available state (sic)

within twenty-five (25) school days after the teaching assistant knew or should have

known of the act or condition on which the grievance is based." *Affidavit of*

*Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶ 11 and*

*Collective Bargaining Agreement at Exhibit A thereto.*

13.    Article III ("Grievance Procedure") of the teaching assistants collective bargaining

agreement provides, at Section 5 thereof that a teaching assistant like the plaintiff

may herself initiate a grievance at Stage1 and that if the teaching assistant initiating

the grievance is not satisfied with a Stage 1 written decision, he or she shall then

present the grievance to the NTA's Grievance Committee. *Affidavit of Assistant*

4

*Superintendent of Human Resources Mary Ellen Leimer at ¶ 12 and Collective Bargaining Agreement at Exhibit A thereto.*

14.     The plaintiff was aware during the period of time that she was a teaching assistant that she had the right to grieve violations of the teaching assistants collective bargaining agreement. *Plaintiff Deposition Transcript at page 159.*

15.     The plaintiff brought no grievance concerning the District's failure or refusal to provide her with letters issued by teacher Patricia Donoghue which were critical of her, concerning the number of evaluations/observations she had received in any school year or concerning the Superintendent of School's recommendation to terminate her probationary employment rather than permit the plaintiff to return to employment for the 2006-2007 school year. *Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶¶ 13, 26 and 27.*

16.     Article III ("Grievance Procedure") of the teaching assistants collective bargaining agreement provides, at Section 5 thereof that if a grievance is submitted to arbitration, the arbitrator must "limit his/her decision strictly to the application and interpretation of the provisions" of the collective bargaining agreement and is "without power or authority to make any decision . . . [c]ontrary to or inconsistent with, or modifying or varying in any way, the terms of this Agreement or of applicable law or rules or regulations having the force and effect of law."*Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶ 15 and Collective Bargaining Agreement at Exhibit A thereto*.

17.     The plaintiff never requested of the NTA a copy of the teaching assistants collective

bargaining agreement; nor did she ever ask the NTA for an opportunity to review it . *Plaintiff Deposition Transcript at pages 17-20.*

18.     Under Article X, paragraphs A (1) and B of the teaching assistants collective bargaining agreement, the plaintiff's work day could not exceed 7 hours and 15 minutes, including a one-half hour lunch and she was entitled to two 15 minute breaks each day. *Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶ 5 and Collective Bargaining Agreement at Exhibit A thereto.*

19.     The District has adopted the following as its basis for determining the applicable 12 month period during which FMLA eligibility is determined: "12 months backward from the employee's first FMLA leave date." *Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶ 16 and Exhibit C thereto.*

20.     The plaintiff's first FMLA leave date during the 2005-2006 school year was September 8, 2005. *Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶ 17 and Exhibit D thereto.*

21.     The plaintiff's working hours during the regular 2004-2005 school year were fixed at 7:20 a.m. to 2:40 p.m., including a one-half hour lunch break, though every couple of months she would stay till 3:00 p.m. to attend a meeting with the principal, and she routinely took one of the two contractual 15 minute rest breaks each day. Consequently, her actual working hours (other than the occasion every couple of months when she would stay until 3:00 p.m and excluding her lunch and 15 minute break) during the regular school year were 6 hours and 50 minutes during each regular school year work day. *Plaintiff Deposition Transcript at pages 20-22.*

6

22.     The plaintiff worked on 137 school days (excluding holidays, 6 snow days during which the schools were closed, and the plaintiff's absences) between September 8, 2004 and June 24, 2005, the last day of school, during the 2004-2005 school year. *Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶¶ 18-21 and Exhibit E thereto.*

23.     Without reducing the plaintiff's working hours during the 2004-2005 school year by the 15 minute break she routinely took, her working hours during the period between September 8, 2004 and June 24, 2005 would total about 936.16 working hours. By adding 20 minutes (for the 3:00 p.m. late departure because of a meeting) for each of  5 occasions (i.e., once every other month) during the school year, the number of the plaintiff's working hours during the regular ten-month 2004-2005 school year between September 8, 2004 and June 24, 2005 would  increase by 1 hour and 45 minutes, to a total of about 937.91 working hours during that time period. *Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶¶ 22 and 23.*

24.     During the period between September 8, 2004 and June 24, 2005, the District had delayed openings by two hours because of inclement weather on three of the school days that the plaintiff worked and had an early closing of schools, ending the day at 1:00 p.m. (1 hour and 40 minutes early) on another day the plaintiff worked; thereby reducing her 937.91 working hours for the regular period between September 8, 2004 and June 24, 2005 by 7 hours and 40 minutes, so that the total of the plaintiff's working hours during the period between September 8, 2004 and

June 24, 2005  were no more than about 930.25 hours. *Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶ 24.*

25.    During the summer of 2005, the plaintiff worked as a clerical employee at the District's South Junior High School and worked on all but 5 of the days of summer school. She had a ½ hour lunch break on each day of summer school she worked. She had 154.5 working hours at the District's South Junior High School during the summer of 2005. *Affidavit of Principal Gary VanVoorhis at ¶¶ 2-4 and Exhibit A thereto.*

26.    The rules concerning the summer school schedule for the summer of 2005 did not permit the plaintiff to work more than 5 hours a day without the permission of her immediate supervisor, Thomas Neppi. *Affidavit of Principal Gary VanVoorhis at ¶2.*

27.    During the period from the commencement of the 2005-2006 school year until her September 8, 2005 medical leave day, the plaintiff worked four days for a total of 26.33 working hours (if a deduction is made for a daily 15 minute rest break) or 27.33 working hours (if no deduction for a daily 15 minute rest break). *Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶ 25 and Exhibit D thereto.*

28.    The total amount of working hours the plaintiff worked for the District from September 8, 2004 through September 7, 2005 were below 1,250, i.e., no more than about 1,112 hours (if no deduction whatsoever is made for her 15 minute breaks). *Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶¶*

*18- 23 and Exhibits D and E thereto; Affidavit of Principal Gary VanVoorhis at ¶¶ 2-4 and Exhibit A thereto.*

29.     On each and every one of the occasions that the plaintiff was out of work during the regular 2004-2005 school year, she had no alternative other than to take the leave and could not have come to or remained at work under any circumstances. *Plaintiff Deposition Transcript at pages 65-78.*

30.     Between September 8, 2005 and June 2, 2006, the plaintiff was absent from work for 72.5 school days. *Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶ 26 and Exhibit D thereto*; *Exhibit YY during the plaintiff's deposition, at Exhibit C to Affirmation of Mark C. Rushfield, Esq.*

31.     The 72.5 days of absence of the plaintiff during the period of September 8, 2005 through June 2, 2006 were for personal illness medical reasons, were unavoidable and the plaintiff could not have appeared or remained at work on any of those occasions under any circumstances. *Plaintiff Deposition Transcript at pages 79-80 and 86-112*; *Medical and other Absence Excuse documentation, Exhibit WW during the plaintiff's deposition, at Exhibit D to Affirmation of Mark C. Rushfield, Esq.*; *Employee Attendance Statement July 2005 through June 2006 (showing absences from 9/8/05 to 6/2/06), Exhibit YY during the plaintiff's deposition, at Exhibit C to Affirmation of Mark C. Rushfield, Esq.*

32.     Neither during the 2003-2004 school year nor the 2004-2005 school year did the plaintiff make any complaint to, or otherwise notify, the NTA that she had been denied either of the two observations/evaluations provided for under the teaching

assistants collective bargaining agreement. *Plaintiff Deposition Transcript at pages 153-156.*

33.  The plaintiff not having received observations/evaluations as a teaching assistant did not cause her concern. *Plaintiff Deposition Transcript at page 161.*

34.  The plaintiff neither requested that the NTA grieve the issue of her failing to receive observations/evaluations, nor did she want the NTA to grieve that issue and the NTA was unaware until after this action was commenced that the plaintiff had not received a minimum of two evaluations or observations each school year. *Plaintiff Deposition Transcript at pages 187-188; Deposition Transcript of testimony of NTA President Philip Cordella at pages 85-86.*

35.  Phillip Cordella was at all relevant times the President of the NTA, which represents the teaching assistants bargaining unit at the District, including the plaintiff. *Deposition Transcript of testimony of NTA President Philip Cordella at pages 8-9.*

36.  The plaintiff was assigned during the 2004-2005 school year and as of the commencement of the 2005-2006 school year to serve as the teaching assistant to special education teacher Patricia K. Donoghue, for her classroom at North Junior High School. *Plaintiff Deposition Transcript at pages 132-135; Affidavit of Ronald L. Jackson at ¶ 2.*

37.  On or about September 14, 2005, teacher Donoghue wrote a letter addressed "To whom it may concern, " which she submitted to North Junior High School Principal Ronald L. Jackson, in which she made complaints about the plaintiff's performance in her special education classroom. *Affidavit of Ronald L. Jackson at ¶ 3 and*

10

*Exhibit A thereto.*

38.    Principal Jackson provided a copy of the 9/14/05 letter from teacher Donoghue  to

the District's then Executive Director of Human Resources, Mary Ellen Leimer, and

held a meeting with the plaintiff and her NTA representative concerning teacher

Donoghue's letter on September 20, 2005. *Affidavit of Ronald L. Jackson at ¶¶ 3-5*

*and Exhibit B thereto*; *Affidavit of Assistant Superintendent of Human Resources*

*Mary Ellen Leimer at ¶27 and Exhibit G thereto.*

39.    By a memo to the plaintiff dated September 26, 2005, of which he forwarded a copy

to then Executive Director of Human Resources Mary Ellen Leimer, Principal

Jackson confirmed the meeting with the plaintiff, stated that during the meeting he

had read each statement or comment made by teacher Donoghue in the letter to the

plaintiff and warned the plaintiff that any further allegations made by the teacher

would result in the district office taking disciplinary action to improve the situation.

*Affidavit of Ronald L. Jackson at ¶¶ 3-5 and Exhibit B thereto; Affidavit of Assistant*

*Superintendent of Human Resources Mary Ellen Leimer at ¶ 27 and Exhibit G*

*thereto.*

40.    On or about October 18, 2005, teacher Donoghue submitted another letter addressed

"To whom it may concern" to Principal Jackson in which she requested that the

plaintiff be permanently removed from her classroom, complained of "passive-

aggressive behavior" by the plaintiff, the plaintiff's history of absenteeism and "her

attempt to undermine my authority" and complained that the classroom atmosphere

had become "too hostile to continue." Principal Jackson provided a copy of that

letter to then Executive Director of Human Resources Mary Ellen Leimer. *Affidavit of Ronald L. Jackson at ¶ 6 and Exhibit C thereto; Affidavit of Mary Ellen Leimer at ¶ 28 and Exhibit H thereto.*

41.   By interoffice letter dated October 18, 2005, Principal Jackson requested of then Executive Director of Human Resources Mary Ellen Leimer that the plaintiff be removed as a teaching assistant from teacher Donoghue's class, to which then Executive Director of Human Resources Mary Ellen Leimer responded by memo of October 25, 2005 that there were then no available positions for the plaintiff, that because the plaintiff was due for tenure in January of 2006, she should be asked to sign a tenure extension agreement and that she should be issued a Critical Letter of Evaluation. *Affidavit of Ronald L. Jackson at ¶ 7 and Exhibits D and E thereto; Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶ 29 and Exhibit I thereto.*

42.   By an agreement made on November 29, 2005, the plaintiff and the District reached an agreement extending for one year the plaintiff's probationary period and the time in which the District could consider whether or not to grant the plaintiff tenure from January 14, 2006 to January 14, 2007. *Deposition Transcript of testimony of NTA President Philip Cordella at page 48; Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶ 30 and Exhibit J thereto.*

43.   By memo dated November 30, 2005 to the plaintiff, a copy of which he provided to then Executive Director of Human Resources Mary Ellen Leimer,  Principal Jackson rendered a "Critical Letter of Evaluation" to the plaintiff, advising her that

12

he had received another letter of concern from teacher Donoghue about the plaintiff's absenteeism and her attitude undermining the teacher's authority, directing the plaintiff to work in a collegial manner and follow the instructions of teacher Donoghue and advising her that the failure to follow that directive would result in disciplinary action. *Affidavit of Ronald L. Jackson at ¶8 and Exhibit F thereto; Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶ 31 and Exhibit K thereto.*

44.     Neither the September 14, 2005 letter from teacher Donoghue nor the October 18, 2005 letter from teacher Donoghue were placed in the plaintiff's personnel folder maintained by the Department of Human Resources at the District's offices. *Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶¶ 32 and 34; Deposition Transcript of testimony of NTA President Philip Cordella at pages 36 and 139.*

45.     By interoffice letter of December 2, 2005 addressed to Principal Jackson and copied to then Executive Director of Human Resources Mary Ellen Leimer, the plaintiff responded to Principal Jackson's letters of September 26, 2005 and November 30, 2005, advised Principal Jackson "that all Ms. Donoghue's accusations are completely untrue" and requested a copy of any correspondence Ms. Donoghue had written to Mr. Jackson about her professional performance. *Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶ 33 and Exhibit L thereto.*

46.     Then Executive Director of Human Resources Mary Ellen Leimer determined that

the plaintiff was not entitled under the teaching assistants collective bargaining agreement with the NTA to inspect or be provided with teacher Donoghue's letters as they had not been, nor were planned to be, placed in the plaintiff's personnel folder. *Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶ 34.*

47.    In or about December of 2005, Principal Jackson issued a formal Teaching Assistant Evaluation Record for the plaintiff for the period of September of 2005 to December of 2005 which rated the plaintiff's level of performance at "less than competency" in all but two of the rating criteria and commented upon there being problems with the plaintiff's role in the classroom. *Affidavit of Ronald L. Jackson at ¶ 9 and Exhibit G thereto; Plaintiff Deposition Transcript at pages 186-187; Exhibit W referred to during the plaintiff's deposition, at Exhibit E to Affirmation of Mark C. Rushfield, Esq.*

48.    By memos of December 13, 2005 and December 19, 2005, then Executive Director of Human Resources Mary Ellen Leimer notified the plaintiff of her transfer from North Jr. High School to the Gidney Avenue School effective January 3, 2006. *Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶ 35 and Exhibit M thereto.*

49.    On January 10, 2006, in coordination with the plaintiff's desire that the NTA file a grievance concerning the Teaching Assistant Evaluation Record for the plaintiff for the period of September of 2005 to December of 2005, the NTA filed a formal grievance with the District and, by letter of January 11, 2006 to then Assistant

Superintendent of Human Resources John Knight, requested a Stage 2 hearing concerning the Teaching Assistant Evaluation Record for the plaintiff for the period of September of 2005 to December of 2005, alleging that the instrument used for the evaluation had not been discussed with the plaintiff by the evaluating administrator and requesting that it be removed from her personnel folder. *Plaintiff Deposition Transcript at pages 186-187; Exhibit C referred to during the plaintiff's deposition, at Exhibit F to Affirmation of Mark C. Rushfield, Esq.; Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶ 36 and Exhibit N thereto.*

50.     On January 10, 2006, in coordination with the plaintiff's desire that the NTA file a grievance concerning the plaintiff's involuntary transfer to the Gidney Avenue School, the NTA filed a formal grievance with the District and, by letter of January 11, 2006 to then Assistant Superintendent of Human Resources John Knight, requested a Stage 2 hearing concerning the plaintiff's involuntary transfer and requested that the plaintiff be reassigned to her position at North Jr. High School. *Plaintiff  Deposition Transcript at page 187; Exhibit D referred to during the plaintiff's deposition, at Exhibit G to Affirmation of Mark C. Rushfield, Esq.; Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶ 37 and Exhibit O thereto.*

51.     On February 7, 2006, each of the grievances referred to in paragraphs 49 and 50 above were denied at Stage 2 by then Executive Director of Human Resources Mary Ellen Leimer in her capacity as the Stage 2 Hearing Officer. *Affidavit of Assistant*

*Superintendent of Human Resources Mary Ellen Leimer at ¶ 38 and Exhibit P thereto; Deposition Transcript of testimony of NTA President Philip Cordella at pages 98 and 102, Exhibits BB and DD during the deposition of NTA President Philip Cordella, at respectively Exhibits H and I to Affirmation of Mark C. Rushfield, Esq.*

52. The NTA, in coordination with the plaintiff, appealed then Executive Director of Human Resources Mary Ellen Leimer's Stage 2 decisions on each of the grievances referred to in paragraphs 49 and 50 above to Stage 3, where they were denied by the District. *Deposition Transcript of testimony of NTA President Philip Cordella at pages 97-104; Affidavit of Assistant Superintendent of Human Resources Mary Ellen Leimer at ¶ 39 and Exhibit Q thereto; Exhibits CC and EE during the deposition of NTA President Philip Cordella , at respectively Exhibits J and K to Affirmation of Mark C. Rushfield, Esq.*

53. The NTA did not submit the grievances referred to in paragraphs 49 and 50 above to binding arbitration for bona fide good faith reasons. *Deposition Transcript of testimony of NTA President Philip Cordella at pages 97-104.*

54. The NTA notified the plaintiff by letter of March 14, 2006 that under the teaching assistants collective bargaining agreement, her involuntary transfer was subject to a review by the District's Superintendent of Schools, whose decision would be final; by letter of March 15, 2006 the NTA requested such a review by the Superintendent of Schools and thereafter met with the Superintendent of Schools seeking to have the plaintiff, who by this time had been transferred to the District's

Vails Gate school, returned to a junior high school teaching assistant position for the coming school year. *Deposition Transcript of testimony of NTA President Philip Cordella at pages 104-109*; *Exhibits FF and GG during the deposition of NTA President Philip Cordella, at respectively Exhibits L and M to Affirmation of Mark C. Rushfield, Esq.*

55.   The NTA did not grieve the District's failure or refusal to provide the plaintiff with the Donoghue letters or the District's alleged reliance upon the complaints in those letters in its decision to terminate her employment because it did not believe that under the teaching assistants collective bargaining agreement the plaintiff was entitled to review or receive copies of those letters so long as they were not included in her personnel folder or that indirect reliance upon those letters for the decision to terminate the plaintiff's probationary employment constituted a violation of any provision of that collective bargaining agreement. *Deposition Transcript of testimony of NTA President Philip Cordella at pages 33-39, 80-83, 85, 126-127 and 143-144.*

56.   The plaintiff attended a meeting with then Executive Director of Human Resources Mary Ellen Leimer and her Union representative on January 25, 2006, during which her alleged inappropriate classroom behavior as complained of by Ms. Donoghue in her letters, as well as the plaintiff's record of absenteeism, was discussed. *Plaintiff Deposition Transcript at pages 208-213; Exhibit HHH during the deposition of the plaintiff, at Exhibit N to Affirmation of Mark C. Rushfield, Esq.*

57.   On January 31, 2006, Superintendent of Schools Saturnelli wrote to the plaintiff a

"Critical Letter of Evaluation," referred therein to the plaintiff's meeting on January 27, 2006 with Executive Director of Human Resources Mary Ellen Leimer and therein advised the plaintiff that "[y]ou have exhibited inappropriate behavior in Mrs. Donoghue's class by challenging her in front of students" and that "[f]urther incidents of this nature and failure to follow my directives will result in my recommendation to the Board of Education that your position as a probationary Teaching Assistant be terminated." *Plaintiff Deposition Transcript at pages 211-215; Exhibit HHH during the deposition of the plaintiff, at Exhibit N to Affirmation of Mark C. Rushfield, Esq.*

58.    By letter of June 23, 2006, the District's Superintendent of Schools notified the plaintiff that she would be recommending to the Board of Education that the plaintiff's services as a probationary teaching assistant be terminated at the close of business on August 28, 2006. *Plaintiff Deposition Transcript at page 216; Deposition Transcript of testimony of NTA President Philip Cordella at pages 121-122; Exhibit MM during the deposition of NTA President Philip Cordella and referred to during the deposition of the plaintiff, at Exhibit O to Affirmation of Mark C. Rushfield, Esq.*

59.    The plaintiff consulted with NTA President Cordella concerning the Superintendent of School's June 23, 2006 letter advising her of the recommendation to be made for her termination and he advised her to request in a timely fashion the reasons for the recommendation, which the plaintiff did. The NTA helped her write the letter requesting the reasons. *Plaintiff Deposition Transcript at pages 252-253;*

*Deposition Transcript of testimony of NTA President Philip Cordella at pages 121-122.*

60.     By letter dated July 6, 2006 ("July 6 reasons letter"), District Superintendent of Schools Saturnelli responded to the plaintiff's request for the reasons for her recommendation that the plaintiff's probationary employment as a teaching assistant be terminated and gave as the reasons that (1) the plaintiff had been excessively absent during the 2005-2006 school year in that she had been absent 72 out of 189 schooldays, (2) that the plaintiff had failed to follow the instructions of the classroom teacher and had undermined her authority in the classroom and (3) that the plaintiff had exhibited poor judgment and inappropriate conduct in the classroom by challenging the classroom teacher in front of her students.  As concerns the second and third reasons above, the letter made no reference to Mrs. Donoghue's letters, but instead referred, respectively, to the Critical Letter of Evaluation dated November 30, 2005 (by Principal Jackson) and Critical Letter of Evaluation dated January 31, 2006 (by Superintendent of Schools Saturnelli). *Plaintiff   Deposition Transcript at pages 251-252; Deposition Transcript of testimony of NTA President Philip Cordella at page 122*;  *Exhibit NN during the deposition of NTA President Philip Cordella and referred to during the deposition of the plaintiff, at Exhibit P to Affirmation of Mark C. Rushfield, Esq.*

61.     By undated letter to the NTA of July 10, 2006, the plaintiff acknowledged that she had received the July 6, 2006 reasons letter from Superintendent of Schools Saturnelli (i.e., "my response letter") on July 10, 2006 (the letter states: "Upon

receiving my response letter today by mail on July 10, 2006 . . . .") and specifically

complained therein of the NTA's failure to properly represent her concerning the

lack of production of the Donoghue letters to her as follows:

> I also feel I have not had support threw out (sic) the year from
> my union this (sic) should of not gotten to this point. For
> example the requests for copies of the letters Mr. Jackson had
> from Mrs. Donohue (sic) you stated I was entitled to those
> letters by contract (sic) he never sent them to us, union never
> followed threw (sic), so there for (sic) in all fairness I could
> not respond to something I never saw.

*Plaintiff Deposition Transcript at pages 243-244, 251-252; Deposition Transcript*

*of testimony of NTA President Philip Cordella at page 127-128; Exhibit PP during*

*the deposition of NTA President Philip Cordella and referred to during the*

*deposition of the plaintiff, at Exhibit Q to Affirmation of Mark C. Rushfield, Esq.*

62.    With the drafting assistance of NTA President Cordella, the plaintiff responded to

Dr. Saturnelli's July 6, 2006 reasons letter by letter of July 12, 2006 to

Superintendent of Schools Saturnelli, in which the plaintiff stated that she had

previously demanded copies of Mrs. Donoghue's letters and complained of the

unfairness of being denied copies of the correspondence from Mrs. Donoghue.

*Plaintiff Deposition Transcript at pages 112-113; Deposition Transcript of testimony*

*of NTA President Philip Cordella at pages 122-123; Exhibit OO during the*

*deposition of NTA President Philip Cordella and referred to (and re-marked as*

*Exhibit ZZ) during the deposition of the plaintiff, at Exhibit R to Affirmation of Mark*

*C. Rushfield, Esq.*

63.    The plaintiff never requested nor was told that the NTA would grieve the issue of

the termination of her probationary teaching assistant position, but rather requested that the NTA do whatever it could to save her job. *Plaintiff Deposition Transcript at pages 228-230; Deposition Transcript of testimony of NTA President Philip Cordella at pages 123-125.*

64.     On or about July 12, 2007, the plaintiff was advised in writing by the NTA, in effect, and understood that it would not be grieving her termination and she was aware that it had not represented her in any other grievances other than the two which had proceeded through Stages 2 and 3 concerning her written observation and her involuntary transfer. *Plaintiff Deposition Transcript at pages 252-254; Deposition Transcript of testimony of NTA President Philip Cordella at pages 130-131; Exhibit QQ during the deposition of NTA President Philip Cordella and referred to during the deposition of the plaintiff, at Exhibit S to Affirmation of Mark C.Rushfield, Esq.*

65.     NTA President Cordella spoke with Superintendent of Schools Saturnelli concerning the plaintiff on the morning of July 25, 2006 as to whether the District would consider any alternatives to the termination of the plaintiff's probationary teaching assistant position, such as additional probation and/or a corrective action plan and a meeting of the Board of Education on those subjects, but was told that Dr. Saturnelli would be going forward with her termination recommendation. *Deposition Transcript of testimony of NTA President Philip Cordella at pages 124-125.*

66.     The District terminated the plaintiff's probationary teaching assistant employment effective August 28, 2006. *Complaint ¶ 36 at Exhibit A to Affirmation of Mark C. Rushfield, Esq.*

WHEREFORE, the defendant requests that this Court render a summary judgment under Rule 56 of the Federal Rules of Civil Procedure dismissing the Complaint in all respects as against said defendant, granting judgment to said defendant and granting said defendant such other and further relief as the Court may deem just and proper.

Dated: March 18, 2008

Respectfully submitted,
SHAW, PERELSON. MAY & LAMBERT , LLP
Attorneys for Defendant Newburgh Enlarged City School District

By:_____/S_____
Mark C. Rushfield, Esq. (MCR0231)
Of Counsel to the Firm
21 Van Wagner Road
Poughkeepsie, New York 12603
845/486-4200